I'd like to express our appreciation to Council for your flexibility in coming in today. It will do you well in the long run because I don't think that you would particularly want to come in later this week. We're having enough trouble getting people. So we'll hear from Mr. Laffey. This is Wilson v. Zielke. Am I pronouncing Zielke right? Yes, Your Honor. Okay, great. May it please the Court, Michael Patrick Laffey representing the appellant Kate Zielke. I'd like to reserve two minutes for rebuttal. That's granted. Thank you, Your Honor. May it please the Court, thank you for allowing me this opportunity to be heard today, number one. Secondly, when I'm recitating the facts today, I would like to state that, as I must do, I'm assuming that the plaintiff's allegations are true and at no point in time am I making any admissions on behalf of Mrs. Zielke. I should have first stated that the third member of the panel is on the telephone. Jane? Yes, yes, I'm hearing everyone loud and clear. Okay, Judge Roth is participating, but she's in Washington and so she's not here. Thank you, Your Honor. I would like to say that Kate Zielke, the appellant in this case, is entitled to qualified immunity from plaintiff's two federal claims. Well, isn't the real question whether we have jurisdiction to hear this at this time? I would respectfully submit no, Your Honor. No? Because all of the allegations, the grounds for our claim for qualified immunity are premised on accepting plaintiff's allegations as true. While there are some disputes of fact, they Again, all our arguments in this case, Your Honor, assume that the plaintiff's allegations are, in fact, true. But is there not a claim for cruel and unusual punishment and is not a pretrial detainee protected from cruel and unusual punishment? By the 14th Amendment. Right. Under the 14th Amendment, that's correct. And the claim here is for 14th Amendment cruelty and punishment. And in particular, the plaintiff has alleged that it's in connection with the serious medical need that Mrs. Zielke was allegedly deliberately indifferent to. And because there's an allegation of a serious medical need, our courts have determined that the Mrs. Zielke should have been confronted with objective evidence of a serious medical need. Well, if we look at the facts in the light most favorable to the plaintiff, it seems to me that there are assertions supporting the plaintiff's position. If I may, Your Honor, the undisputed facts and the facts as accepted by true as plaintiff establish that plaintiff was issued rules and regulations on the date he was placed on house arrest. Those rules and regulations which he signed for specifically instructed the plaintiff that if there's any technical malfunction with the equipment or if there's any type of emergency, that he is to contact his local police department. He tried. According to his evidence, he tried. He tried time and time again. And he was told that if he kept bothering them, they would put him in jail. And I understand that's the allegations with respect to Mrs. Zielke, but there was no attempt whatsoever to contact the local police department. There was no attempt on behalf of plaintiff. Well, why should he contact the local police department when the person who put the band on him wouldn't do anything? You really think the local police department would have done something under those circumstances? I would like to think that they would have, Your Honor. And Mr. Wilson was not... In effect, the local police department, I mean, they have the authority to adjust the bracelet? Is there anything in the record on that? There's nothing in the record indicating what their authority is, Your Honor. Or that they have anything to interfere with the county function, right? Of administering bail. I know that they work hand in hand with the bail office. For example, when Mr. Wilson... Did they have a key to the bracelet? No, and Your Honor, I'm glad you asked that question because I don't know if Your Honors have had an opportunity to look at the bracelet. It's not something that's activated by key. It's a thin rubber band. I attach this as an exhibit down with the lower court. So it has to be cut off, right? Yes, Your Honor, and it could be cut off with an ordinary pair of kitchen scissors. And if Your Honors would like to view the band... Oh, no, but then... She could have told him that. But then he would have been in violation of the condition of release, right, if he cut it off? Not if he had a serious medical need, Your Honor. I, you know, obviously... But when he spoke to her, did she say to him, oh, if it's not there, just cut it off or go to the local police? There's no evidence at all that she did anything like that. And when Mr. Wilson met with Constable Lee Estes and complained, Estes told him to contact the bail office. According to the plaintiff, that's correct, Your Honor. And isn't that how we're looking at this case at the present time? I understand that, Your Honor. And I think what's crucial here is the complaints that were given to Ms. Zielke were limited to, it's tight, it hurts, this thing's killing me. Well, isn't that a complaint? I would say it's a subjective complaint of pain, but it's not objective evidence that something needed to be done. But she tried to pick his pants leg up and she wouldn't look at it, as I recall. And that was... Is that right? Is that in the record? That's in the record. Okay, so that would have provided an objective basis, but she wouldn't look at that. So why should we say that there was no objective basis? Because on March 2nd, when Mr. Wilson first complained, Ms. Zielke looked at it and said that's the way it's supposed to be. Well, but then he said it was tight. I understand that, Your Honor. And he complained at the beginning. And where Mr. Wilson complained was to his attorney, criminal defense attorney at the time, on the date the house arrest ban was applied. That criminal defense attorney was named Wendy Roberts. The plaintiff has alleged that he called Mrs. Roberts, complained to her about the tightness of the ban. Notably, Mrs. Roberts made no mention of a complaint of tightness. Rather, her documented evidence was that... Who's Mrs. Roberts? His girlfriend? No, Mrs. Roberts was one of his criminal defense attorneys at the time, Your Honor. I thought it was a man with a name. He had two. He had Wendy Roberts and Charles Mystico. They're partners, Your Honor. So it was important enough to him to call two people. Yes, Your Honor. And Mrs. Roberts documented her conversation by saying she spoke with the plaintiff and that he needed written paperwork to leave the county for work. Well, why isn't there a factual issue? I mean, that's the only thing we have to decide on that, right? I believe... We don't decide the merits. Well, I believe there are factual issues, but I would submit that they're not material to the claim submitted. For example, Your Honor, the First Amendment retaliation claim... That's a separate claim. Have we moved off the 14th Amendment now? No, I wasn't sure which claim to address first, Your Honor. Whatever you want. It's your time. Thank you, Your Honor. With respect to the First Amendment retaliation claim, the elements of such a claim are that, number one, the person was engaged in protected speech, number two, that the government actor took adverse action, and that, number three, there's a causal connection between the protected speech and the adverse action. Do you have a First Amendment right to complain? Yes, we're not disputing that, Your Honor. Okay. What we're challenging is that there's simply accepting all the facts as true, as plaintiff. There is no evidence that Mrs. Zielke took an adverse action against plaintiff. Well, she said to him, you know, if you keep complaining, we'll just throw you in jail. Isn't that adverse action? No, it's not. That's a threat. No, it's not, Your Honor. Isn't that a threat? No. Can that be construed by the jury as a threat? No, Your Honor. Why not? Because as a matter of law, I think I cited eight cases in my brief from the Eastern District of Pennsylvania, the Middle District of Pennsylvania, the Western District of Pennsylvania, and in fact, this Honorable Court in Gay said, all ruled, that a threat cannot be construed as adverse action for persons. But this is more than a threat. This is the absence of taking an action, and an absence of taking an action is an action, as I remember from my philosophy class. Not doing something is, in a way, doing something. And here, she didn't, I mean, she took the action of not removing or loosening it. And isn't that an adverse action? No, Your Honor. I think that's an omission. And in fact, I think if our court has ruled that actually making a threat and threatening somebody, which requires at least some act, is not adverse action for First Amendment purposes, then I would respectfully submit that it belies logic that no action whatsoever could be adverse action. Well, leaving it in its place is an action, right? I would respectfully submit no, Your Honor. I think adverse action means that you have to do something to change the person's circumstances. Yeah, that's right. And not changing it to accommodate the pain is an action. Well, that's a philosophical issue that we're going to have to decide. Commerce Laffey, you just said you had, you know, several district court cases from the Eastern and Middle District of the country. But, you know, there are circuit court cases around the country that say a threat is sufficient as a retaliatory action for First Amendment purposes. What do you do with those cases? Well, if they're not within the Third Circuit, Your Honor, then I would respectfully submit that they're not controlling. What are you saying? A district court case from the Third Circuit is more controlling than a circuit court case from another circuit? Is that what you're saying? You haven't cited a Third Circuit case, right? I have cited a Third Circuit case, Your Honor. That says what? What happened was the district court in Gaye. Gaye was an inmate. Third Circuit case. What's the holding of the Third Circuit case? The holding of the Third Circuit case was that a verbal threat is not a retaliatory act for First Amendment purposes. But this is more than a threat. That's what we're asking you. This is the failure to take amelioratory action. I understand, Your Honor. And I would just respectfully submit that if a threat is not a retaliatory act, then an omission, which involves no activity whatsoever, cannot be a retaliation. You know, if somebody's requesting relief, and the government actor denies them that requested relief, and the person keeps going to the government actor requesting the same relief, and that actor fails to act, the government actor takes no action whatsoever, I respectfully submit that that's not a retaliatory act. Well, we'll have to decide that. I understand, Your Honor. Go ahead. You still have a little time. Thank you, Your Honor. I have some questions. With respect to, and, again, I understand that there's disputes of fact here, because my client does allege that at no time did plaintiff ever call her and complain about the tightness of the band. However, that fact is not material with respect to the plaintiff's 14th Amendment substantive due process claim, or, I'm sorry, 14th Amendment cruelty and punishment claim, where he's asserting that she was deliberately indifferent to a serious medical need. But you agreed that he complained. I mean, there's no – I mean, is there a dispute of fact as to whether he complained or not? There's absolutely a dispute of fact, but I would respectfully submit – our position is that the first time Mrs. Zielke became aware that there was any issue of tightness was the day the plaintiff – the day after he went to the hospital to get the thing cut off. Didn't the plaintiff produce evidence of a complaint by other people – evidence of other people, whether by affidavit or a deposition? I'm not sure. There was no evidence. I thought the person who was in his law firm – the brief points out that a number of people heard the complaint. You say that that's not so? Your Honor, my red signal is on. No, no, you can answer my question. I can override the red signal. Thank you, Your Honor. There's no evidence whatsoever that anybody else complained to Kate Zielke. The sole evidence that a complaint was – No, people who heard him complain. Yes. There is evidence of that. The plaintiff indicated that he complained to his criminal defense attorney, Wendy Roberts. To his girlfriend. To his girlfriend, who is a nurse. Yeah. To his other criminal defense attorney, Charles Nistico. And it's undisputed, Your Honor, that Wendy Roberts never attempted to contact him. No, no. But is it disputed that at least he says, I complained to these people, and you haven't put anything in – you couldn't to say he didn't, right? That's correct. Okay. Let me mention, too, you cite Gay to us. But Gay is an unreported Third Circuit case and is not precedential in our determination here. Thank you, James. I forgot that. Yes, Your Honor. Okay. All right, we'll hear you on rebuttal. Well, did you have any more questions, Jane? No, I don't. Thank you. Okay. Good afternoon, Your Honors. My name is Alan – excuse me – Alan Yatvin, and I represent the appellee, Patrick Wilson, in this matter. Could I ask you a question? Sure. Because I really worked on this, and I – you have three claims, three constitutional claims. I know of two, and I can't distinguish between what you call your third and this. Could you tell? One is the First Amendment claim, right? Yes, Your Honor. And one is the Fourteenth Amendment claim, which is as if it were an Eighth Amendment claim where he a prisoner, but he's a pretrial detainee. Yes, Your Honor. What's the next one? Well, the Fourteenth – What about punishment? The Fourteenth Amendment claim has two parts. There's the deliberate indifference to the medical need. So that's the – that's what would be the Eighth Amendment claim. Right. Okay. And although I would submit that this Court has now said that the Eighth Amendment is the floor when the medical need claim is brought under the Fourteenth Amendment. Yeah, but we're not talking about the substance of the merits of the claim. I'm just trying to figure out what the – what that other claim is. The other claim, Your Honor, is perhaps analogous to an excessive force claim under the Fourteenth Amendment where someone – Isn't that the same as the Eighth Amendment claim? No, Judge. It's different because you can be subjected to cruelty and punishment in some way, force, putting the band on too tight without – possibly without it rising to the level of a medical need. Now, I understand that there is an intersection between the two, but she deliberately caused pain in the first moment. She put it on. He said it's too tight. Mr. Janes, who was with him, said it looks too tight. Mr. Wilson complained about it, and she refused to loosen it. At that point, she has imposed a punishment on a pretrial detainee with no legitimate penological or justice purpose. So that's the difference in that claim, and I submit that – Do you know of any case that makes this distinction? Yes, Your Honor. Fuentes says that the unnecessary or wanton infliction of pain upon a pretrial detainee is a Fourteenth Amendment violation. As distinguished from what would ordinarily be an Eighth Amendment claim? Yes, Your Honor. Okay. What kind of Eighth Amendment claim? You're talking about the deliberate indifference type of claim? The standard for both is deliberate indifference, but – No, no, just a minute. Sure. That can't be for the first one. For the First Amendment? No, no. The First Amendment claim you were just talking about. No, it isn't that. It requires some kind of, you know, state of mind that's more than indifference. Yes, Your Honor. It requires an unnecessary and wanton infliction of pain, according to Fuentes. That can't be deliberate indifference. You're correct. The medical claim is deliberate indifference. As to the non-medical cruelty claim, it would be unnecessary and wanton infliction of pain. And as this Court also said in Hubbard 1, I believe Judge Roth was on that panel, if it's not rationally related to some penological purpose, then punishment may be inferred. And here we have a situation where there was no reason to – That's the same 14th Amendment – All right, then what's your other 14th Amendment claim? The medical claim, deliberate indifference to medical need. Deliberate indifference to a serious medical need. Yes. Analogizing to that under the 14th Amendment. Right. And there is a separate 14th Amendment claim for that? Yes. And what case supports that? Doesn't Hubbard sort of say there's only one, you know, for pre-trial detainees, there's only one overall 14th Amendment claim that, you know, analogizes to the 8th Amendment? No, I think there can be a variety of claims under the 14th Amendment, and the point is not the amendment that they're brought under or even the section of the amendment, but the harm caused. And in one case where you have – I submit where you're inflicting pain and refusing to relieve that pain can be a cruelty and punishment claim. All right. So you said Flint supports that. Now, what case supports the second type of deliberate indifference? Well, the Natale case in this circuit said that if there's a serious medical need and the acts or omissions demonstrate deliberate indifference to that need, then there can be a claim under the 14th Amendment. And the Natale court said that in that case deliberate indifference is consistent with recklessness. And, in fact, Your Honor, I believe that in the Fuse decision in your circuit, I don't know if you're on the panel or you were actually the author, you said deliberate indifference may be shown if an officer ignores or fails to respond to pain or possible medical need. In that case it was dental pain. The corrections officer transferred the person without making sure that he was going to receive dental care. So the medical claim in that case arose and the issue was deliberate indifference. The damages would merge, though, wouldn't they? Absolutely, Your Honor. So that whether we're talking about two prongs of the 14th Amendment, we still have one 14th Amendment, one First Amendment claim, and one 14th Amendment claim. I'm not willing to concede that to you, Your Honor. I don't think it matters. I don't either. I think there are two different standards that the jury would have to decide on in order to find those claims. What's the difference in the standards? I think that for the infliction of pain-type claim, it's unnecessary to want an infliction of pain if not rationally related to the purpose. Is that from Pat Fuentes? Fuentes and Hubbard won. I see. And deliberate indifference for ignoring or failing to respond. It's a medical. To the medical need. That's Natale. Natale and Fuse, F-E-W-S. Did the district court uphold all three claims? Yes, the district court did uphold all three. Judge Jones, right? Judge Jones, right. I mean, the district court did make a distinction, as you're doing now, between the two types of 14th Amendment claims. The district court did, Your Honor. If you want, I can look at the... Okay. Then go to your friend's First Amendment argument, where he says that a threat alone, without any action, is not a violation of the First Amendment. Well... How do you answer that? As Judge Teshima pointed out, there are decisions in other circuits. To the contrary, the Ninth Circuit on October 28, 2009, after the briefs were filed in this case, in the case of Brodheim v. Crye, specifically said that threats in themselves, under certain circumstances, can constitute an action to give rise to a First Amendment claim. And I also believe that this court, or this circuit, in Sterling's case... I apologize, Your Honor. I thought I had it at my fingertips, and I don't. But in the case of Madonna-Sterling v. Minersville Police Department... Well, it's in your brief. Yes. I see it. And the court there specifically said that threats accompanied by a chilling effect that deny or hinder the exercise of a constitutional right have been deemed cognizable. So you think there's a First Amendment right to complain? There is certainly a First Amendment right to complain. And Mr. Wilson was complaining, and she cut off the complaining by saying, Be quiet. You have 15 minutes to go home. If you don't stop complaining, I'm going to lock you up. So that's different from all the cases that my learned colleague has cited, because it's there at that moment. The speech was arrested at that exact moment and cut off. In the Third Circuit case with Sterling, that really turns out to be dicta, doesn't it? It does, because in Sterling the key to the case was the right to privacy. But in that case, the threat, I mean, the right to privacy arises from the First Amendment, and the threat was to disclose Marcus, Mr. Wayman. I'm sorry, Your Honor, I was trial counsel with Mr. Rudofsky in that case. So it ultimately was a right to privacy, but it did arise from the First Amendment just as this case does. And the court looked to the threats. Well, in this case, the threat seems to have been made, according to the facts in your brief, at the time the bracelet was put on, when it wasn't that obvious that it was causing swelling or sores, et cetera. And the threat, from what we can see, did not stop him from continuing to complain. So can we really look at a threat of this nature as a serious imposition against his expression of his complaint, since he didn't stop complaining? Well, Judge Roth, I believe that the threat actually was made on more than one occasion, and I don't have at my fingertips, but I can provide the citations to the record where the threat was actually made. So it wasn't just at the point where the band was put on, but also Mr. Wilson. Didn't the head call him and say, if you don't stop complaining, or call the lawyer and tell the lawyer? That is the allegation, although the head was dismissed from the case. So he's not in the case at this point. But we submit that Ms. Zielke did threaten more than once. But also you have the problem that Mr. Wilson, while he did continue to complain, the specific record in this case, he says, look, I didn't want to get in more trouble than I was already in. He only complained every other day, not every day, as I read your brief. If you read the description of not Mr. Wilson, but his co-worker, as to his foot being swollen purple like a football, to be able to hold off and not complain every day and only complain every couple of days is a monumental effort. And the point is chilling, there's not a degree of chilling. Just because you exercise some First Amendment rights doesn't mean that you've been, haven't been prevented from exercising your full panoply of First Amendment rights. He would have complained much more if she hadn't threatened him. Maybe he would have gone to her supervisor. Maybe he would have done a lot of different things. But she stopped him. Additionally, Does he have any permanent damage? Yes, Your Honor. If you look at the very end of the facts section, you'll see he has permanent nerve damage. And is that still there? Yes, Your Honor. Okay, go ahead. I cut you off. I'm really, I'm sorry. And unfortunately I lost that train of thought. I'm sorry. Oh, the other point I was making. Well, you were saying that he would have complained more. Right. And the other point I was making is that even without the threats, you have the retaliation which I believe Judge Roth was picking up on, which is that you have an individual who is complaining about the pain, and the more he complains, the less responsive to him she is. She's refusing to talk to him. She's refusing to look at it. She's refusing to listen. So I don't think we need to get to the high philosophical argument of whether a failure to act is an act, because she could have taken it off if she wasn't so turned off by this guy whining and complaining and so angry at him and so threatening of him, she would have dealt with it. So that in itself is a retaliation. Continuing the pain, continuing the injury to Mr. Wilson by leaving the tight band on. So actually the adverse effect comes in two forms, the threat which chilled his speech and the punishment for his speech. So whiners have rights too, is that? Your Honor, in my family we all have rights. I believe that covers all my argument. Are there any points that ‑‑ Jane, do you have any more questions? No, I don't. Okay. Thank you, Your Honor. Thank you. May I provide the after argument to the court with the cites to the Ninth Circuit cases that I mentioned? Are they not in your brief? They're not in the brief. Oh, yeah, I think that would be helpful. I'm sure Judge Tashima especially. Ninth Circuit cases are always helpful, I hope. One was subsequent to the briefs being filed in this matter and the other one I came across when researching Judge Tashima's record. Okay. Thank you, Your Honor. Thank you. Have a good afternoon. Thank you. Yes, you have rebuttal. Thank you, Your Honor. I'll be brief because I have two minutes. Yes, Mr. Black. With respect to the number of claims, counsel has submitted that there's a separate 14th Amendment claim for deliberate indifference to serious medical needs. That's a standard of culpability. That is not a separate 14th Amendment constitutional violation. It falls under the category of cruelty and punishment, and that's where our Supreme Court, and I think it was Estelle, ruled that when you assert deliberate indifference to serious medical needs, that's actionable under the Eighth Amendment's cruelty and punishment. Does that help you whether it divides into two claims or whether it divides whether it's really one claim? There's a 14th Amendment claim. I think for purposes of cleaning up the claims and making things easier so the defendant would know what standard is being applied. That's something that can be decided at trial by the trial judge. It's interesting. I understand. I raised the issue because I couldn't understand it. What are you saying, though? Are you saying in your view, as a matter of law, there can only be one 14th Amendment claim in this actual situation? In this case, it's a cruelty and punishment claim where the plaintiff is alleging that it's deliberate indifference to his serious medical needs. That's the standard of culpability that needs to be applied. It's not a separate claim in and of itself. That's under Supreme Court and Third Circuit case law. SL, which applied to the Eighth Amendment because it involved a convicted person. With respect to the First Amendment recent cases, I would just respectfully submit, as counsel has indicated, that these cases were decided after this case. All these events occurred in 2000. That doesn't make them wrong. I mean, the Supreme Court has made very clear that we have to read its recent cases, too. And I understand that. I'm not saying that they're wrong. What I'm saying is it wouldn't have been clearly established at the time of the alleged incident. Oh, well, that's a different issue. Yeah. And this incident happened when? In March of 2005, Your Honor. So it has to be clearly established laws of that time, right? Yes, Your Honor. That's a good point. I have my red light on. May I? Do you still have something to say? I wanted to say... Go ahead. Thank you, Your Honor. We're just waiting for the snow anyway. This is a case where Mr. Wilson was on house arrest wearing this particular band on his right leg for 12 days. And I think it's crucial to point out and emphasize that on the ninth day of his alleged suffering, he was required to appear at the Delaware County Court to be arraigned. Him and his attorney made a tactical decision. This is uncontested. That he was to show up alone, unrepresented by counsel, so he would get a return-with-counsel date. At no point in time did Mr. Nistico, his attorney who's allegedly been receiving these complaints for the past nine days, decided to accompany him to the courthouse when his office... Well, what is that? Isn't that the affirmative defense of contributory negligence? Is that what it amounts to? No, Your Honor. What is it? You're talking about that. What does that have to do with his claim? It has to do with there should be some objective evidence. In fact, Attorney Nistico, after the hearing... Objective evidence, though, is something you establish at trial. You don't have to allege and to complain. I have objective evidence of deliberate indifference. I think for a serious medical need case to go forward, that there needs to be, Kate Zielke needs to be presented with objective evidence of a serious medical need. Mr. Nistico, his attorney... He has permanent damage to his foot. And the doctor's notes say it was purple and swollen. I mean, that we can see. That's objective. Mr. Nistico, but that's all coming out prior to him getting treatment. Well, but that's his point. His point is that I was seriously damaged, and she didn't do anything about it. But his own attorney inspected it on the ninth day. Yeah, but his attorney is not a doctor. Well, but with respect to the standard, the standard for a serious medical need is that a plaintiff's condition is serious when it is, quote, unquote, so obvious that an ordinary person would easily recognize the need for a doctor's attention. But that's a jury argument, isn't it, really? I mean, we can't decide that. I would respectfully submit... We can't decide the merits. I would respectfully submit that it's not a jury argument because Mr. Nistico testified that he had no concerns about it. And when I asked him why not, he said, because I just wasn't. Well, he was busy with some other things. He's a lawyer. Lawyers are busy with some things. You know, lawyers get busy. I understand that, but with respect to his nurse, who was living with him practically every other night at the time, testified she had no medical concerns until Sunday, the day he went to the hospital. She was interested in something else from him. And I gather that relationship is terminated, and they'll have no fury like a woman scorned, right? Thank you. We will take this matter under advisement. Thank you, gentlemen, for coming in today. Jane, we'll retire to my room and we'll call you. Good. Okay, and I'll call you on your cell phone. Is that all right? It would be better to call me on the house phone. I get better reception.